UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-6566-MJ-STRAUSS

FILED BY_____AT_____D.C.

Nov 17, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

IN RE: CRIMINAL COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: *Edward N. Stamm*
‎ ‎ ‎ ‎ ‎ ‎ Edward N. Stamm (FL Bar #373826)
Assistant United States Attorney
U.S. Attorney's Office - SDFL
99 Northeast Fourth Street, 8th Floor
Miami, Florida 33132-2111
(305) 961-9164
E-mail: edward.stamm@usdoj.gov

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>FRENEL CENAT ("CENAT")<br><br>Defendant(s) | )<br>)<br>)  Case No.  23-6566-MJ-STRAUSS<br>)<br>)  FILED BY ___AT___ D.C.<br>)<br>)  **Nov 17, 2023**<br>)  ANGELA E. NOBLE<br>  CLERK U.S. DIST. CT.<br>  S. D. OF FLA. - FTL |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/16/2023 - 11/16/2023__ in the county of __Broward and elsewhere__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1951 | Hobbs Act extortion under color of official right & attempt. |
| 18 U.S.C. §641 | Theft of government funds. |
| 21 U.S.C. §846 | Attempted possession with intent to distribute cocaine. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Lindsey Kellis, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date:  __11/17/2023__

_____
Judge's signature

City and state:  __Fort Lauderdale, Florida__     Honorable Jared M. Strauss, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lindsey Kellis, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since 2022. I have received intensive training at the FBI Academy in Quantico, Virginia, focused on both criminal and national security investigations. I am currently assigned to the Miami Division Palm Beach County Resident Agency and work as a member of the Public Corruption Unit, with other Special Agents and local law enforcement. I have participated in investigations involving the corruption of elected officials and law enforcement officers and other violations of Federal law. I am a law enforcement officer of the United States, and I am empowered to conduct investigations, execute warrants, and make arrests for offenses against the United States enumerated in, but not limited to, Title 18 and Title 21 of the United States Code.

2. This affidavit is submitted in support of a criminal complaint charging FRENEL CENAT ("CENAT") with attempted Hobbs Act extortion under color of official right (18 U.S.C. §1951); theft of government funds (18 U.S.C. §641); and attempted possession with intent to distribute cocaine (21 U.S.C. §846).

3. The statements in this affidavit are based upon my personal knowledge, training and experience, as well as on information provided by other individuals, including civilian witnesses and other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain the requested criminal complaint, it does not contain all the facts regarding this case of which I am aware, but only those facts and circumstances sufficient to establish probable cause.

## PROBABLE CAUSE

4.     CENAT is a certified Police Officer employed by City of Miami Police Department (MPD) since approximately September 9, 2008. Since approximately August 2020, CENAT has been assigned to the MPD's Administrative Division, working in the Property and Evidence/Vault/Warehouse Unit. At all times relevant to this Complaint, CENAT has been issued and using an MPD unmarked police vehicle, specifically, a 2016 Black Ford Explorer, license plate XF6652, as a "take home" vehicle.

5.     All MPD Police Officers are provided with the Departmental Orders which contain MPD Rules and Regulations when hired to which they are bound. MPD Police Officers are endowed with legal authority and are given this power and responsibility by the people to protect individual rights, to preserve the public peace, to enforce the law, to protect life and property, to prevent and detect crime, and to arrest violators of the law. The MPD Rules and Regulations prohibit the unauthorized use or attempted use of an officer's official position for personal or financial gain, and they also prohibit the acceptance of bribes, money, or other valuables, while acting in the capacity of a police officer, either on or off duty. These Rules and Regulations also state that an officer shall not accept a bribe or engage in any act of extortion or unlawful means of obtaining money, a reward, or anything of value through their position.

6.     In September of 2023, your affiant interviewed a confidential human source ("CHS") who was being investigated for his/her involvement in narcotics trafficking activities, who stated that he/she had been told that CENAT had previously conducted traffic stops of individuals, known to have just engaged in drug transactions, for the purpose of stealing the drugs and/or money those individuals were transporting. The CHS indicated that CENAT would use his official MPD issued police vehicle and be in his MPD uniform when he conducted these traffic

2

stops and thefts. The CHS informed your affiant that he/she was aware of this information through a mutual friend ("the Associate") of both the CHS and CENAT, who had been in frequent contact with the CHS, and had expressed interest in utilizing the CHS for setting up drug transactions and/or providing intelligence about drug transactions occurring in the near future. The CHS has a prior Federal conviction for drug trafficking and is currently cooperating with multiple law enforcement agencies on a number of matters in an effort to receive favorable consideration in connection with the other crimes for which he/she is currently under investigation. As part of the CHS' cooperation efforts, the CHS agreed to consensually record conversations and meetings with the Associate and CENAT under the direction and supervision of your affiant and other law enforcement agents in furtherance of this investigation.

7. The investigation to date has utilized the CHS, FBI undercover agents, and several other law enforcement officers. Video and/or audio recordings were made throughout the investigation which captured CENAT coordinating schemes and conducting traffic stops of two individuals who he was told had just engaged in drug transactions, with the intention of stealing the money and/or drugs involved in those illegal transactions. In addition to reviewing the consensual recordings made during this investigation, your affiant and other law enforcement personnel involved in the investigation also have reviewed messages exchanged between the CHS and CENAT and/or the Associate.

8. On October 16, 2023, the Associate introduced CENAT to the CHS at a meeting at the Associate's office in Broward County that was consensually recorded by the CHS. CENAT introduced himself as "Frenel". The Associate, CENAT and the CHS discussed an opportunity for CENAT to stop an individual immediately following a drug transaction and steal approximately $50,000 USD that individual would have in their vehicle. During this meeting, CENAT showed

3

the CHS his MPD unmarked police vehicle and sounded the lights and sirens. CENAT described how he likes to set up the "play" [the term "play" has been described to your affiant by the CHS as a scheme to steal drugs and/or money from an individual known to have just engaged in a drug transaction] and CENAT's preference to do traffic stops after receiving intelligence about a drug transaction and the participating individuals so that he can use that information during the traffic stops to ensure compliance with his demands. CENAT indicated that he conducts the traffic stops outside of his jurisdiction as a police officer and while off duty. CENAT stated "on duty they [MPD] got computers on and can track you and shit like that... you know what I mean... ping your phone... what you are doing in this area. You don't wanna do that shit bro while you are on duty" and "If I work down there I will never fuck down there bro". CENAT and the Associate discussed several prior bad acts involving drug transactions where they coordinated and conducted traffic stops utilizing CENAT's position and authority as a police officer to coerce the individual(s) stopped to give up their drugs, money, or both to CENAT in lieu of going to jail. CENAT stated "I just need bread now." and he also discussed various bills he plans to pay with the money obtained from the upcoming "play". CENAT indicated the CHS could contact him in the future through the Associate.

9. On November 1, 2023, the Associate started a group chat with CHS and CENAT via Signal which is an encrypted messaging and call application. CENAT was identified in this chat under username "Fro Swole", using the phone number (561) 856-2734 which had been previously identified as the phone number utilized by CENAT through T-Mobile subscriber information. During the group chat, the participants agreed to do a three way call later that evening to discuss details for the upcoming "play" scheduled for Friday, November 3, 2023.

10. On November 1, 2023, at or around 5:44 PM, the Associate and CENAT utilized Signal to group call the CHS. During this consensually recorded call, CENAT told the CHS the upcoming "play" must be at night due to his concern for cameras and "too many eyes". CHS and CENAT discussed the "play" and the individual CENAT will be conducting the traffic stop on, who will have approximately $50,000 USD from the purported drug transaction. CENAT asked the CHS to provide him with the time and location of the deal, as well as the driver's name, physical description, known associates, and vehicle information. CENAT indicated that he would use this information when he conducts the traffic stop to scare the individual into believing they were being investigated and watched for some time so that the driver would be more likely to comply with CENAT's request for the money. CENAT indicated that he would find a good spot to pull the individual over for the traffic stop. CHS, CENAT, and the Associate agreed to meet at the Associate's office after the traffic stop to split the illicit drug proceeds taken by CENAT.

11. On November 2, 2023, CENAT messaged the CHS via Signal to call him. During a consensually recorded call between the CHS and CENAT, CENAT again requested information about the individual he would be conducting the traffic stop on. CENAT discussed the split of the proceeds and stated that his role was his badge. CENAT asked the CHS if he expected the driver to resist and the CHS told CENAT that he believed the driver would be compliant. CENAT went on to explain that he would give the driver the choice of giving him the bag, believed to contain the money from the drug transaction, or spending life in federal prison.

12. On November 3, 2023, your affiant and other law enforcement personnel initiated an undercover operation involving the use of two FBI undercover employees (UCE 1 and UCE 2). The UCEs portrayed the roles of two individuals involved in a purported drug transaction exchanging 3 kilograms of cocaine for $52,000 USD at the Stadium Hotel parking lot in Miami

Gardens, Florida, at approximately 7:30 PM. UCE 2 was to portray the role of the driver carrying the proceeds of the purported sale who would be stopped by CENAT.

13. On November 3, 2023, at approximately 10:57 AM, CENAT messaged the CHS via Signal and asked "how we looking for tonight and on those details?" The CHS provided CENAT with a message providing details about the driver, including his nickname, physical description, and his supposed associates and girlfriend. The message also stated that the driver had flown in from Dallas for the deal. In response, CENAT asked the CHS if he knew the driver's real name and stated that the driver being from out of town "makes it better". CENAT also told the CHS he would post up around 7 PM.

14. At approximately 6:03 PM, during a consensually recorded call via Signal, CENAT indicated he was on his way to Stadium Hotel. CENAT asked if the CHS had a description of the individual's vehicle and requested a message from the CHS when the driver was leaving the drug transaction so CENAT could set up behind the individual and conduct the traffic stop. CENAT and the CHS also discussed cutting the Associate out from the deal or lying about the amount taken from the traffic stop so the Associate gets a smaller cut of the proceeds.

15. At approximately 6:46 PM, CENAT was staged in the parking lot of Stadium Hotel. Law enforcement involved in this investigation observed CENAT in his MPD-issued vehicle at that location. At approximately 7:36 PM, the CHS messaged CENAT a description of the individual's vehicle for the traffic stop. CENAT messaged the CHS "He just pulled in". At approximately 7:38 PM, UCE 1 walked in the Stadium Hotel parking lot with a two-toned gray backpack and got into UCE 2's vehicle and they engaged in a staged drug transaction. CENAT

messaged the CHS "Somebody just got in the car? Is that your homeboy?" UCE 1 exited the vehicle with a black duffle bag containing FBI prop drugs.

16. At approximately 7:39 PM, UCE 2 began to depart the parking lot of Stadium Hotel. CENAT followed UCE 2 out of the parking lot and immediately turned on the lights and sirens of his MPD unmarked police vehicle to conduct a traffic stop of UCE 2. Once UCE 2 pulled over, CENAT approached the vehicle and asked UCE for license and registration. UCE 2 provided CENAT with the driver's license, which was ultimately taken by CENAT and never returned to UCE 2 following the traffic stop. CENAT then introduced himself as "Officer Martez" with "Miami PD – Dade County Narcotics Unit". CENAT told UCE 2 he witnessed the drug transaction that had just occurred between UCE 1 and UCE 2. CENAT then utilized the information he received from the CHS to try to make UCE 2 believe he/she was being investigated. CENAT told UCE 2 to give him the backpack, which was just provided to UCE 2 by UCE 1 during the controlled drug transaction and contained $52,000 USD in official United States Government funds belonging to the FBI. When UCE 2 reached for the backpack, CENAT unbuttoned his holstered his weapon which was on his duty belt. CENAT took the backpack and asked UCE 2 for his/her phone. UCE 2 provided CENAT with the phone, which was running a covert audio/video recording program, and it captured a video of CENAT holding the phone up to his face before he gave the phone back to UCE 2. CENAT then gave UCE 2 the choice of giving him the backpack or going to jail, and as planned, UCE 2 told him to take the backpack. CENAT then left the scene with the backpack of money. This traffic stop was consensually audio recorded. In addition, as part of the investigation, law enforcement photographed and recorded the serial numbers of all the currency making up the $52,000 in U.S. government funds before it was placed into the backpack for this operation. The $52,000 consisted solely of $100 bills.

17. At approximately 7:52 PM, during a recorded phone call, CENAT told CHS he was going to pull over and count the money to split it up. CHS and CENAT again discussed cutting the Associate out of the deal. At approximately 8:02 PM, during a consensually recorded phone call, CENAT asked the CHS about the split and if 14k sounds good, 7k for CHS and 7k for CHS's friend (UCE 1) who was believed to have provided the CHS with the intelligence on the drug transaction. CENAT asked for the address of the location where he and the CHS would meet to split the money from the traffic stop, and the CHS messaged CENAT the address of a Home Depot in Coral Springs, Florida.

18. At approximately 8:27 PM, CENAT arrived in the parking lot of the Home Depot, exited his MPD unmarked police vehicle, and approached the driver's side window of the CHS's vehicle. CENAT provided the CHS with a stack of money totaling $13,000 USD. CENAT showed the CHS his tactical police vest and described for the CHS the traffic stop on UCE 2. This meeting lasted less than 10 minutes and it was consensually audio recorded. In addition, by reviewing the serial numbers, your affiant has confirmed that this $13,000 was part of the $52,000 in U.S Government Funds taken by CENAT from UCE 2 during the traffic stop.

19. Following this meeting with the CHS, CENAT drove straight to his residence located at 1301 NW 7th Court, Boynton Beach, Florida. CENAT was seen in his driveway exiting his unmarked MPD vehicle with a bag under his right arm, believed to be the gray backpack taken during the traffic stop of UCE 2 that contained the remaining $39,000 USD.

20. On November 7, 2023, at approximately 11:56 AM, CENAT called the CHS via Signal and asked if the CHS knew of a "play" they could do for 5 "Diri blan" [Haitian Creole phrase used when referring to drugs/kilograms as described by the CHS to your affiant]. This call

was consensually recorded by the CHS. CENAT indicated he had someone in Orlando that he promised drugs from a prior "play" he did with the Associate and an unidentified individual known by the alias "Hush". CENAT asked the CHS "You think you can put a play together" and "if you could put a play...10 or 7 whatever, put that shit together."

21. On November 12, 2023, at approximately 7:20 PM, the CHS made a consensually recorded call to CENAT via Signal to discuss an upcoming "play" scheduled for November 16, 2023. CHS explained that the individual CENAT would be conducting the traffic stop on would have approximately 6 or 7 kilograms of cocaine and at least $30,000 USD from a purported drug transaction. The CHS explained that the deal was going to take place in Deerfield to which CENAT responded "even better". Once again, CENAT told the CHS to give him the details on the guy he would be stopping. When discussing the split of the money and drugs being stolen by CENAT, CENAT indicated that the individual in Orlando has not contacted him again about the drugs, and that the CHS could take the drugs and he (CENAT) would take the money. CENAT then recounted how he did the traffic stop theft on November 3, 2023, and stated "bro if everything goes like Friday, I'll be in heaven". The CHS indicated he would provide more details later in the week.

22. On November 14, 2023, at approximately 3:04 PM, CENAT messaged the CHS via Signal and confirmed that the deal was still on for November 16, 2023, and asked the CHS "you got that info on him".

23. On November 15, 2023, at approximately 7:29 AM, CENAT messaged the CHS via Signal and asked if the CHS had "any useful info on the play?" The CHS provided CENAT with a location, time, and general description of the individual to be traffic stopped. CENAT asked the CHS "Is he going to have the bread and the keys together at the same time?"

24. At approximately 7:13 PM, during a consensually recorded call via Signal, the CHS and CENAT discussed the upcoming deal, including the 5 to 7 kilos of cocaine that supposedly would be in the car being stopped. CENAT indicated he would give the cocaine to the CHS and the CHS's buddy to sell for money, and he and the CHS also discussed the split and the amount each "brick" would go for on the street being approximately $16,000 USD, for a total of $112,000 or $115,000. CENAT requested the exact location and description of the individual's vehicle so he would know who to pull over for the traffic stop. The CHS agreed to provide the intelligence the day of the deal.

25. On November 16, 2023, your affiant and other law enforcement personnel initiated an undercover operation involving the use of two FBI undercover employees (UCE 1 and UCE 2). The UCEs portrayed the roles of two individuals involved in a purported drug transaction exchanging 3 kilograms of cocaine for $30,000 USD at the Fairfield Inn parking lot in Deerfield Beach, Florida, at approximately 8:00 PM. UCE 2 was to portray the role of a drug courier who was delivering drugs and picking up the proceeds of the purported sale and supposed earlier sales who would be stopped by CENAT.

26. On November 16, 2023, at approximately 12:52 PM, CENAT called the CHS via Signal to discuss the deal which supposedly was taking place at the Fairfield Inn parking lot located in Deerfield Beach at or around 8 PM. This call was consensually recorded by the CHS. The CHS again explained to CENAT that the individual being stopped would have both drugs and money in the vehicle when the traffic stop occurs. CENAT indicated he will take the money and drugs from the individual during the traffic stop and then meet the CHS to split what was stolen. The CHS and CENAT discussed splitting the money and drugs taken during the traffic stop and CENAT stated "If you want the bread and the money you take five and I take two, and then what… I take 30 and

you take 20... or you want all 7 and I'll just take the money... it's whatever". CENAT and the CHS then continued to discuss a number of split possibilities and CENAT ultimately indicated they could figure it out once they saw what they got from the stop. CENAT then again asked the CHS for information about the vehicle and driver like the last time.

27. At approximately 1:09 PM, CHS messaged CENAT via Signal and provided CENAT with details about the driver, including his name, the city he came from, and the names of his supposed girlfriend and son. At approximately 7:21 PM, CENAT called the CHS via Signal and indicated he was staged in the Fairfield Inn parking lot. This call was consensually recorded by the CHS. Law enforcement involved in this investigation observed CENAT in his MPD-issued vehicle at that location. CENAT explained to the CHS where he would conduct the traffic stop after the drug transaction occurs in the parking lot. At approximately 7:55 PM, the CHS messaged CENAT a description of the individual's vehicle for the traffic stop.

28. At approximately 8:11 PM, CENAT messaged the CHS via Signal "Gray Toyota Tacoma pulled in. Is it him?" At approximately 8:13 PM, UCE 1 walked in the Fairfield Inn parking lot and UCE 2 exited the vehicle to greet UCE 1 at the back of the vehicle and the two engaged in a staged drug transaction. After the exchange, UCE 1 walked back to the hotel with a gray bag containing 3 kilos of DEA prop drugs.

29. At approximately 8:15 PM, UCE 2 began to depart the parking lot of the Fairfield Inn. CENAT followed UCE 2 out of the parking lot and turned on the lights of his MPD unmarked police vehicle to conduct a traffic stop of UCE 2. Once UCE 2 pulled over, CENAT approached the vehicle and asked the UCE to turn off the vehicle and provide their driver's license. UCE 2 provided CENAT with the driver's license. CENAT then introduced himself as "Officer Martez"

with "Broward County Sheriff's Office – Narcotics Unit". CENAT told UCE 2 he witnessed the drug transaction that had just occurred between UCE 1 and UCE 2. CENAT asked UCE 2 to keep their hands on the steering wheel while CENAT went to the truck bed of the vehicle, opened a cooler, and took a blue duffle bag containing 7 kilos of DEA prop drugs and $80,000 USD in official United States Government funds belonging to the FBI. CENAT returned to the driver's side window of UCE 2's vehicle and utilized the information he received from the CHS to try to make UCE 2 believe he/she was being investigated. CENAT asked UCE 2 "you want to go home tonight or spend 30 years in... Federal prison?" and then asked for UCE 2's phone number. CENAT stated "you now work for me" and "when I call...you better answer" and "If I call you and you don't answer... I'm coming for you". At approximately 8:21 PM, CENAT left the scene with the blue duffle bag containing DEA prop drugs and money. This traffic stop was consensually video/audio recorded. In addition, as part of the investigation, law enforcement photographed and recorded the serial numbers of all the currency making up the $80,000 in U.S. government funds before it was placed into the blue duffle bag for this operation. The $80,000 consisted solely of $100 bills. Law enforcement also photographed the blue duffle bag and the prop drugs before they were used in this operation.

30.     At approximately 8:25 PM, CENAT called the CHS via Signal and indicated the deal was completed and asked where to meet for the split. This call was consensually recorded. CENAT indicated the duffle bag taken from the traffic stop contained 8 or 10 kilos of cocaine. The CHS told CENAT to meet at the Walmart parking lot located in Coral Springs. At approximately 8:44 PM, CENAT arrived in the Walmart parking lot to meet with the CHS and split the proceeds. CENAT exited his MPD issued vehicle and walked over to the CHS' vehicle. CENAT was then arrested by the FBI.

31. After CENAT was arrested, law enforcement recovered the blue duffle bag, the 7 kilos of prop drugs, and a large quantity of $100 bills from CENAT's unmarked MPD vehicle.

## CONCLUSION

32. Based on my training and experience as supported by the facts stated in this affidavit, I respectfully submit that there is probable cause to believe that during the time frame described herein, **FRENEL CENAT** committed Hobbs Act extortion under color of official right and attempted Hobbs Act extortion under color of official right, in violation of 18 U.S.C. §1951(a); theft of government funds, in violation of 18 U.S.C. §641; and attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §846.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT LINDSEY KELLIS
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn before me
this **17th** day of November 2023.

_____
HONORABLE JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

13