UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  24-60016-CR-JIC

UNITED STATES OF AMERICA,

vs.

FRENEL CENAT.

_____/

DEFENDANT CENAT'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE
FROM THE ADVISORY SETENCING GUIDELINES AS CALCULATED IN THE PSI REPORT

COMES NOW, the Defendant, FRENEL CENAT, by and through his undersigned

counsel, and respectfully requests this Honorable Court to impose a non-guideline sentence

based upon the factors set forth in 18 U.S.C. Sec. 3553(a). For the reasons stated herein, defense

submits that a variance from the PSI's proposed guideline sentence should be granted below the

adjusted offense level calling for 135-168 months for Mr. Cenat, so as to ensure

that a reasonable sentence is imposed; one that is not greater than necessary, using all of the

statutory considerations.

This Memorandum in Aid of Sentencing is being filed pursuant to Rule 32 of the Federal

Rules of Criminal Procedure. The Defendant is requesting that this Court consider all materials

contained within, and after computing an Advisory Guideline range, fashion an appropriate and

reasonable sentence. Pursuant to Booker vs. United States, 543 U.S. 220 (2005), the Defendant,

Frenel Cenat, would respectfully request this Honorable Court consider a downward variance

from the guideline range from his adjusted offense levels and impose a sentence of 120  months

Bureau of Prisons, followed by Supervised Release.

<u>Grounds for Variance</u>

The Defendant is asking this Court to fashion a reasonable sentence, and, in consideration of the Defendant's conduct, as a whole, would ask that those sanctions in Title 18, United States Code, 3553(a), be considered. Title 18, United States Code, 3553(a) provides, in relevant part:

Factors to be considered in imposing this sentence — the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider(l) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to

        provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical

        care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range established···;
(5) any pertinent [Sentencing Commission] policy statement···;

(6) the need to avoid unwarranted sentence disparities among the defendants with similar

    records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Defendant would respectfully submit that a variance from the Guideline Range is appropriate in this case. In the Sentencing Reform Act of 1984, Congress set forth a panoply of

factors to be considered by Courts in determining an appropriate sentence. One of these factors was the sentence prescribed by the Guidelines.

    (A) The Nature and Circumstances of the Offense

1. Cenat began cooperating with law enforcement at the time they first apprehended him.

    The Defendant was apprehended by law enforcement at his home on November 16, 2023. He was transported, Mirandized, and waived Miranda rights telling officials of his misconduct and agreeing to unlock his phone and give them access to all data. His questioning went on for several hours and he was both truthful and remorseful.  He did not deflect or obscure facts.  He knew what he had done was wrong and he immediately began to attempt to correct his mistake.  He met with his counsel and the Government on or about December 12, 2023 at the FBI office in Miramar.  A short time later, he permitted the undersigned to advise counsel for the Government that he would agree to plead guilty.  The undersigned and AUSA Edward Stamm then began crafting an Information as well as plea documents.  He also agreed as part of those plea documents to several aggravating factors so as to simplify issues at sentencing.

    Defense admits that there is highly inflammatory statements that he had made to the CHS relative to Cenat having done the same behavior with other drug dealers.  This is a fact Cenat denies.  He agrees that it was said, but explains that it was a degree of "puffery" so as to convince the CHS as well as

the unindicted co-conspirator that had made the introduction of the two, that

he could carry off the deal if he was brought in to do the stop of the courier.

## (B) THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Frenel Cenat is a 41-year-old married man with two children.  He is U.S. Citizen, who

has served his country as a law enforcement officer in excess of 17 years. He has no prior

criminal history. As a result of his conduct in this matter, he has lost his position, his pension

and his family is further struggling with the loss of his income.  He has committed a terrible

offense, and has breached the public trust that he spent most of his adult lifetime trying to earn

and protect.

The Government's Sentencing Memorandum makes note that Mr. Cenat was earning a

six figure salary at the time of the commission of the offense.  This is true, but it only began to

be realized from 2022 onward after the Miami Police Department finally recognized his

Master's degree in Public Administration that he had received from Barry University.  For the

three years prior he was earning gross wages between $80-85k.  He supported a family of four

on this after payroll taxes/Medicare/FICA fees were deducted.  It is also worth mentioning that

those figures included overtime that Mr. Cenat worked at off-duty details.  The City of Miami

was paid by the vendors to provide security, and the City then remunerated Mr. Cenat for his

off-duty work.  Many nights he would work these immediately after leaving his shift and then

proceeding to varying points in Miami at differing locations.  Many nights, he would either be

too tired  to drive the 56 miles to his home in Boynton Beach, or he figured he'd be "turning

around" to come back to work this next day after a few hours sleep, thereby causing him to

sleep in his city-issued vehicle.  These routines became the normal for him as a necessity for

making a living for his growing family.  This off-duty was voluntary and done due to the financial pressures Mr. Cenat felt.[1]

The undersigned have attached supporting documentation showing Mr. Cenat's wage statements for taxable years 2019-2022. These are attached  Mr. Cenat had previously requested such documents from MPD, but has not yet received them.  The documents additionally show 1099 payments made by at least one independent vendor, Platinum Parking First, LLC.  This was an independent off-duty detail.  Cenat would often work off-duty at Marlin Stadium.

As further evidence of financial pressures that were being brought to bear on the Defendant, the undersigned has attached evidence of collections and lawsuits as well as credit that was "written off for non-payment, and Cenat's Student Loan balance statement.  These debts total as follows:

| | | |
|---|---|---|
| Discover Bank | August 23, 2019 | $13,215.81 |
| American Express | February 19, 2019 | $16,070.43 |
| Ashley Furniture | 2020 | $   664.00 |
| Student Loan | | $91,886.42 |
| Total | | $127,836.66 |

The Sentencing Reform Act also instructs the Courts to consider the "history and characteristics of the defendant," Apart from consideration of criminal history, the mandatory Guidelines gave Courts little room to satisfy this statutory mandate, and almost no room to consider the positive traits of an accused. In rendering the Guidelines advisory, Booker, supra, properly restored the Court's discretion to take into account the whole person when meting out

---

[1] Clearly, these facts are not used to justify his behavior, but as a possible mitigator so that the Court can understand why he fell from grace and acted unlawfully.

punishment. See, generally, <u>United States vs. Ramum</u>, 353 F. Supp. 2d 986: "In cases in which the defendant's history and character are positive, consideration of all the 3553(a) factors might call for a sentence outside the Guideline range."

Despite the offense conduct and the possibility that a dangerous situation could have resulted, those who know Frenel know him as a protector.  His 89-year old neighbor details in her letter to the Court in aid of sentencing that he would regularly check in on her after working a "long overnight shift." He would walk around her property and both he and his sons would do tasks around her house, carrying groceries into her home when she returned from the store. Another friend talks about Frenel being the first person to put himself out when someone was in need.

## SOME ADDITIONAL THOUGHTS

Given the vast amount of post-Booker, supra, case law, the Defendant would submit that this Court has the authority, discretion and the inherent ability to sentence the Defendant below the Advisory Guideline range. "Under the Advisory Guidelines, a sentencing court is free to consider any fact relevant to 3553(a). A Court is not barred by the fact that a particular factor is discouraged or even forbidden by the Guidelines."

In 2007, the United States Supreme Court decided <u>Rita vs. United States</u>, 2007 W.L. 1772146, 127 S. Ct. 2456 (2007), and noted, "The sentencing Court does not enjoy the benefit of a legal presumption that the Guideline sentence should apply."

On a personal level, Mr. Cenat has expressed a deep guilt over not being able to "bring his mother back home."  She has been confined to a nursing home and is largely non-communicative due to several very severe strokes.  He sees her religiously.  Although it is not

6

reasonable to assume that the money he was recovering in these two transactions were life-changing for him or for her, it is a reflection of the desperation that he felt to produce financially.

For all the above-referenced reasons, the Defendant would respectfully request that he be granted a variance from the applicable Advisory Guideline Sentence, and that he be sentenced to a period of incarceration of 120 months, i.e. the statutory minimum mandatory sentence.  Such a sentence would take into account the seriousness of the offense and more accurately reflect a sentence that is reasonable and not greater than necessary to promote respect for the law.

1 HEREBY CERTIFY that a true copy of the foregoing has been sent to all parties of record by CM/ECF this 10 <sup>th</sup> day of June, 2024.

HOWARD J. SCHUMACHER, P.A.
1 E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33301
(954) 356-0477
FL Bar No: 776335

BY:     /S/Howard J. Schumacher

HOWARD J. SCHUMACHER, ESQ.